UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE | § § § | CASE NO: 22-10851 |
| JASON WHITE, | § § | CHAPTER 13 |
| DEBTOR. | § § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

The Court held an evidentiary hearing on August 14, 2025, to consider the *Motion To Modify Chapter 13 Plan Post Confirmation* (the "Motion To Modify"). [ECF Doc. 80]. Julia Haverkamp ("Haverkamp"), the Debtor's former spouse, filed objections to the Motion To Modify, [ECF Docs. 86 & 101], as did the Chapter 13 Trustee, [ECF Doc. 98]. The Debtor filed a reply brief in support of the Motion To Modify. [ECF Doc. 97].

Each party in interest was represented by counsel at the evidentiary hearing. The Court heard testimony from the Debtor and Haverkamp and admitted the following exhibits into evidence: Debtor Exhibits F, I, O & P, [ECF Doc. 126]; and Haverkamp Exhibits B–F, H–I & K–Q, [ECF Doc. 125].

At the conclusion of the hearing, the Court took the matter under advisement. [ECF Doc. 130]. Pursuant to Federal Rules of Bankruptcy 7052 and 9014, the Court now makes the following findings of fact and conclusions of law:

**JURISDICTION**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b). The venue of the Debtor's Chapter 13 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FINDINGS OF FACT[1]

1. The Court does not find the Debtor to be a credible witness. The Debtor was evasive on the witness stand, providing vague or non-responsive answers to questions about his finances. The Debtor also admitted to including erroneous information in his bankruptcy filings. The Court thus gives little weight to his testimony.

2. The Court finds Haverkamp to be a generally credible and earnest witness. She appeared to answer questions posed to her truthfully and to the best of her recollection.

3. The Debtor filed a sole voluntary petition seeking bankruptcy relief under chapter 13 of the Bankruptcy Code on July 28, 2022. [ECF Doc. 1].

4. Haverkamp timely filed two proofs of claim against the Debtor's estate. Proof of Claim No. 4 filed by Haverkamp asserts a general unsecured claim of $119,028.84 based on an attached contested community property partition judgment issued in her favor by a Louisiana state court on May 22, 2022. Proof of Claim No. 5 filed by Haverkamp asserts a prepetition priority unsecured claim for child-support arrears in the amount of $395.10, based on an attached consent judgment dated January 17, 2017, in which the Debtor was ordered to pay Haverkamp $395.10 per month retroactive to January 1, 2015. The Debtor filed his petition for bankruptcy relief two months after obtaining the community property partition judgment against him. [ECF Doc. 1].

5. No objections to either of Haverkamp's proofs of claim have been filed.

6. On July 28, 2022, the Debtor filed Schedule I, listing his monthly gross income as $6,064.52. [ECF Doc. 9]. Since then, the Debtor's monthly gross income stated on amendments

---

[1] To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

2

to Schedule I has increased by $2,265.49. [ECF Doc. 37 (listing monthly gross income of $6,532.03); ECF Doc. 59 (listing monthly gross income of $6,531.03); ECF Doc. 64 (listing monthly gross income of $7,886.80); ECF Doc. 94 (listing monthly gross income of $8,330.01)].

7. Neither the Debtor's initial Schedule I nor any amendment lists a payroll deduction for domestic support obligations. [ECF Docs. 9, 37, 59, 64, 94]. On his initial Schedule J filed on the Petition Date identifying monthly expenses, the Debtor listed a fourteen-year-old dependent daughter, and included a monthly expense for domestic support obligations in the amount of $395.10. [ECF Docs. 10]. On October 5, 2022, the Debtor amended Schedule J, but the amount of the monthly domestic support obligation stayed the same. [ECF Doc. 38]. On October 1, 2023, the Debtor amended Schedule J, increasing the amount of the monthly expense for domestic support obligations to $750.00 without notice or reason, [ECF Docs. 60 & 61], and amended Schedule J again on April 30, 2025, to increase the amount of the monthly expense for domestic support obligations to $850.00, without notice or reason, [ECF Doc. 84]. The Debtor amended Schedule J a final time on June 11, 2025, listing the amount of the monthly expense for domestic support obligations as $850.00, without notice or reason. [ECF Docs. 95 & 96].

8. The Debtor's initial plan proposed that general unsecured claimants would receive a *pro rata* distribution of $6,852.99 or 4.44% of the value of their claims. [ECF Doc. 12]. The Debtor checked the box "None" in § 7.2.b of the plan regarding ongoing domestic support obligations. *See id*. On August 15, 2022, the Debtor amended his plan to increase distributions to general unsecured creditors to $7,052.99 or 4.57% of the value of their claims, but still acknowledged no ongoing domestic support obligations. [ECF Doc. 28].

9. On August 30, 2022, the Chapter 13 Trustee filed a *Notice to Domestic Support Obligee*, in which he advised Haverkamp that the Debtor had identified her as a domestic support

3

obligee at the mandatory meeting of creditors held pursuant to 11 U.S.C. § 341. [ECF Doc. 33]. On October 3, 2022, Haverkamp objected to plan confirmation, asserting that the Debtor had not disclosed all of his income or his tax returns as required by § 521 of the Bankruptcy Code and the Plan did not provide for payment of all of the Debtor's disposable income pursuant to § 1325(b)(1)(B) of the Bankruptcy Code. [ECF Doc. 35].

10. On October 5, 2022, the Debtor amended his plan again to provide that general unsecured creditors would receive *pro rata* distribution of $18,621.58, or 12.19% of the value of their claims, but still answered "None" to the question regarding ongoing domestic support obligations. [ECF Doc. 36]. Haverkamp withdrew her objection to confirmation. [ECF Doc. 51].

11. On December 7, 2022, this Court issued an Order confirming the Debtor's Chapter 13 plan as amended (the "Plan"). [ECF Doc. 53]. The Plan provides that the above-means Debtor will pay $265.00 for the first two months, followed by fifty-eight (58) payments of $495.00. Under the Plan, Haverkamp would receive approximately $13,700.00 of the $119,028.24 community property partition judgment.

12. The Debtor knew at the time he filed his initial Schedule J and proposed plan, as well as all subsequent amendments of those documents, that his monthly obligation to pay domestic support obligations would end on the eighteenth birthday of his dependent daughter in July 2025, two years before the end of his Plan's repayment period, or August 2027. *See* Hr'g Rec'g 2:39–:40 (Aug. 14, 2025); [ECF Doc. 80, ¶ 9].

13. On April 9, 2025, the Debtor filed a *Motion for Authority To Incur Indebtedness*, in which he requested permission to execute a Parent PLUS student loan:

> Debtor is seeking authority to sign a Parent PLUS student loan for his daughter, who will begin her freshman year at Louisiana State University in the fall of 2025. After accounting for scholarships, TOPS award, Innovation awards, and Stafford Loans, Debtor's daughter's cost per semester by way of a potential Parent

4

> PLUS Loan is $10,821.51. **The loan would not come due until Debtor's daughter had completed her final semester, which she anticipates will be in the Spring of 2029.**
>
> **As the loan repayments will not come due during the remainder of the Debtor's Chapter 13 plan, no creditor will be prejudiced by the Debtor entering into this loan agreement.**

[ECF Doc. 76, ¶¶ V & VI] (emphasis added). After an opportunity for notice and hearing, the Court approved that motion with no objections filed. [ECF Doc. 90].

14. On April 30, 2025, in Month 33 of 60 of the Plan, the Debtor filed the Motion To Modify pursuant to § 1329(a) of the Bankruptcy Code. The Debtor requests to modify the Plan for the following reasons: "In or around January 23, 2024, Debtor's child support obligation increased to $850.00 per month, plus an arrearage payment of $887.22 [and] the Debtor paid $4,150.00 directly to the Internal Revenue Service on April 11, 2024 for a balance owed for the tax period 2023." [ECF Doc. 80, ¶ 6].

15. The Debtor proposes to suspend all payments for Months 34 through 38 and then decrease monthly payments during Months 39 to 60 from $495.00 to $315.00. [ECF Doc. 80, ¶ 7]. That reduction would reduce recovery to general unsecured creditors by over 4%, from 12.19% down to 7.92%. [ECF Doc. 80, ¶ 8]. The Debtor acknowledges that "his child support obligations are scheduled to conclude in July 2025," and proposes that he "continue to provide these funds for his daughter for college costs and living expenses." [ECF Doc. 80, ¶ 9].

16. Haverkamp objects to the Motion To Modify on the following grounds: (1) the Debtor fails to explain the 2023 tax debt, particularly in light of the monthly $843.05 payroll deduction claimed on his Schedule I filed on October 1, 2023, withheld for taxes (citing ECF Doc. 59); (2) the Debtor's child support increased by $100 per month only because he failed to make ongoing child support payments and failed to reimburse Haverkamp for the child's tuition and fees as required by court order; (3) funding adult children at the expense of general unsecured creditors

is impermissible under applicable case law and §§ 707(b)(2)(A)(ii)(IV) and 1325(b)(3) of the Bankruptcy Code; and (4) the Debtor has not identified specifically the living or educational expenses of his adult daughter that he proposes to pay. [ECF Doc. 86].

17. The Debtor has been employed for fifteen years as a worker's compensation claim supervisor. *See* Hr'g Rec'g 1:34–:38. The Debtor's pay advices spanning fifteen pay periods from December 29, 2024, to July 26, 2025, document year-to-date gross earnings of $58,532.86. *See* Debtor Ex. P. The average gross income over those seven months totals $8,361.84 per month. *See id*.

18. The Debtor has lived with a significant other for approximately nine years, but testified that he does not know the amount of her income. *See* Hr'g Rec'g 1:37–:39; 2:05–:11. She is employed full-time at a personal injury law firm. *See* Hr'g Rec'g 2:05–:11. The Debtor and his significant other share a joint checking and a savings account, and the Debtor has an individual checking account at the same bank. *See id*. The Debtor filed Schedule A on the Petition Date listing assets that included two Capital One checking accounts and one savings account. [ECF Doc. 3].

19. The Debtor testified that he and his significant other split household expenses and that he listed his share of household expenses on Schedule J, which he has amended several times to increase expenses over the course of his bankruptcy case. *See* Hr'g Rec'g 1:38–:43; [ECF Docs. 10, 38, 60, 84 & 95].

20. The Debtor testified that, although the Parent Plus loan that he executed will cover the tuition, housing, and a meal plan every semester, he wants to contribute to his adult daughter's everyday living expenses like dormitory room supplies, off-campus meals, transportation costs,

her cell phone service subscription, medical insurance, and car insurance. *See* Hr'g Rec'g 1:57–:59.

21. The Debtor testified that his monthly child support obligation ended in July 2025 and that he has made the final payment. *See* Hr'g Rec'g 2:43–:45.

22. The Debtor presented no evidence regarding his alleged 2023 tax liability.[2]

23. The Debtor presented no evidence that his adult daughter is elderly, chronically ill, or disabled and unable to pay for her everyday living expenses.

**CONCLUSIONS OF LAW**

"Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, et seq., was created 'to address consumer credit loss during the Great Depression by providing a completely voluntary proceeding for consumers to amortize their debts out of future earnings.'" *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006) (quoting *In re Nolan*, 232 F.3d 528, 530 (6th Cir. 2000)). Under the current chapter 13 consumer bankruptcy regime, a wage-earning debtor is required to make monthly payments of his projected disposable income over a term of no longer that sixty months pursuant to a written plan confirmed by the Court. *See* 11 U.S.C. §§ 1321, 1322 & 1325. Specifically, § 1325 states in pertinent part that if the Chapter 13 trustee or an unsecured creditor objects to confirmation, this Court may not approve the plan unless, as of the effective date of the plan, either unsecured creditors get paid in full or "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Projected disposable income means current monthly income minus reasonable monthly expenses and that calculation, for an

---

[2] The Debtor testified at length regarding alleged increased medical supplies, but presented minimal evidence of actual expenditures for medical treatment and supplies. *See* Debtor Ex. O. Regardless, the Court finds that evidence to be irrelevant because the Debtor's Motion To Modify does not assert increased medical expenses as a basis for the proposed modification.

above-means debtor, incorporates the deductions allowed in § 707(b)(2) of the Bankruptcy Code. *See* 11 U.S.C. §§ 1325(b)(2) & (3). Relevant here, § 707(b)(2) provides that

> the debtor's monthly expenses may include . . . the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an **elderly, chronically ill, or disabled household member or member of the debtor's immediate family** (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) **and who is unable to pay for such reasonable and necessary expenses**. . . .

11 U.S.C. § 707(b)(2)(A)(ii)(II) (emphasis added).

At any time after confirmation but before completion, the debtor, trustee, or any unsecured creditor may request a modification to change plan terms. *See* 11 U.S.C. § 1329. A Chapter 13 plan may be modified whether or not there has been an unanticipated, substantial change in the debtor's circumstances or not. *See In re Gilbert*, 622 B.R. 859, 863 (Bankr. E.D. La. 2020) (citing *In re Meza*, 467 F.3d at 877–88). But a plan modified under § 1329(a) must satisfy the requirements of a plan under § 1325(a). *See* 11 U.S.C. § 1329(b); *In re Sellers*, 409 B.R. 820, 824 (Bankr. W.D. La. 2009). Among other requirements, § 1325 requires that a plan be "proposed in good faith." 11 U.S.C. § 1125(a)(3). "To determine whether a Chapter 13 plan was filed in good faith, the bankruptcy court applies a 'totality of the circumstances' test." *Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 346 (5th Cir. 2007). Under that test, this Court will consider factors including

> (1) the reasonableness of the proposed repayment plan, (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code, (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan.

*Id*. (internal quotations and citations omitted).

"The burden of proof is on the party seeking modification." *In re Anderson*, 545 B.R. 174, 176 (Bankr. N.D. Miss. 2015). Because the text of § 1329(a) is permissive, this Court retains discretion to approve or deny a requested modification even if the Debtor shows that all of the requirements of § 1329 are met. *See In re Arlin*, 596 B.R. 516, 524 (Bankr. N.D. Tex. 2019) (citing *In re McAllister*, 510 B.R. 409, 430 (Bankr. N.D. Ga. 2014)). Courts consider proposed modifications "in light of all the circumstances" and "the two fundamental concepts of a fresh start for debtors and fairness to creditors." *Id*. (citing cases).

"A renewed income and expense analysis is required [for proposed plan modifications] because 'a debtor's income and expenses may be considered when evaluating the totality of circumstances under the good faith modification analysis.'" *In re Etaroo*, 546 B.R. 516, 521 (Bankr. E.D.N.Y. 2016) (quoting *In re Hall*, 442, B.R. 754, 761 (Bankr. D. Idaho 2010)). "In effect, the ability-to-pay analysis subsumed in the good faith requirement is a backstop that applies to scenarios where a debtor's financial conditions have demonstrably changed in a material and unanticipated way." *Id*. at 521–22. Considering the totality of the circumstances here, specifically, (1) the Debtor's increase in income by over $2,000 per month since the beginning of the case, (2) his domestic support obligations ending in July 2025, and (3) his request to pay the living expenses of an fully functioning adult daughter at the expense of unsecured creditors, the Court finds that the Debtor's proposed plan modification is not proposed in good faith. *See e.g.*, *In re Etaroo*, 546 B.R. 516 (Bankr. E.D.N.Y. 2016); *In re Harris*, 415 B.R. 756 (Bankr. E.D. Cal. 2009).

Accordingly,

**IT IS ORDERED** that the Motion To Modify is **DENIED**.

**IT IS FURTHER ORDERED** *sua sponte* that the Chapter 13 Trustee and the Debtor **SHALL APPEAR AND SHOW CAUSE** on **Friday, February 20, 2026, at 11:00 a.m.** as to

why the Debtor's monthly plan payment should not be increased by $850, at a minimum, to reflect the Debtor's change in financial conditions. The hearing will occur at the United States Bankruptcy Court, 500 Poydras Street, Courtroom B-709, New Orleans, Louisiana 70130. Parties in interest may participate (i) in person, (ii) by telephone (Dial-in 504.517.1385, Conference Code 129611), or by video (https://gotomeet.me/JudgeGrabill) (audio by dial-in above).

New Orleans, Louisiana, this 26th day of January, 2026.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUTPCY JUDGE